EDWARD NALLE & CO., APPELLANTS, VS. MATTHEW LIVELY,
ET AL., APPELLEES.

A relinquishment of dower by a wife for the benefit of her husband is a
sufficient consideration for a subsequent settlement upon her by him;
and such settlement is not fraudulent as to creditors of the husband
if the relinquishment was obtained upon an express agreement with
her that the settlement should be made, and the property settled upon
her is a fair equivalent for the dower released.

Appeal from the Leon Circuit Court, Second Judicial
District.

The opinion of the court contains a statement of the case.

*R. B. Hilton* for Appellants.

1. The deed from Hayward to the trustees of his wife can
be of no possible validity under the statutes of Florida until
September, 1865. There is no evidence outside of the ad-
mission of the attorneys that it was signed by him until that
day, while the evidence is positive, indeed it is admitted on
the other side that it was not until that day witnessed or re-
corded.

"No estate or interest of freehold, or of a term of years of
more than two years, * * * shall be created * * *
in any other manner than by deed in writing, sealed and de-
livered in the presence of at least two witnesses. Bush's
Dig., 148.

"All grants, conveyances or assignments of trust or con-
fidence of or in any lands, * * * shall be by deed sealed
and delivered in the presence of two witnesses, * * *
* * or else the same shall be void and of none effect.
Ib., 149.

"No conveyance, transfer or mortgage of real property or
of any interest therein, * * * shall be good or effectual
in law or in equity against creditors, * * * unless the
same shall be recorded in the office assigned by law for that
purpose." Ib., 151.

Nalle & Co. v. Lively et al.

"It is perfectly clear," say the Supreme Court of the United States in Clark vs. Graham, 8 Wheat., 577, " that no title to lands can be acquired or passed unless in accordance with the law of the State in which they are situated, and the laws of Ohio requiring the execution of deeds in the presence of two witnesses; a deed executed in the presence of one is void." 21 Mich., 24.

It is impossible to believe, with the admission before us of Hayward's sagacity and extensive dealings in buying and selling, that he ever *attempted* the execution of the settlement until in 1865, when, finding himself insolvent, it became desirable to secure a portion of his estate for the benefit of his wife, and of course for his own benefit.

2. It is admitted that at the time the conveyance of Hayward for the use of his wife became a deed, to-wit, in September, 1865, Hayward was insolvent, and that the appellants were his creditors. Nor will it be denied that, being so insolvent, he could not then make a voluntary conveyance to his wife valid as against his creditors.

But it is attempted to establish as a valid consideration for the settlement, the relinquishment by Mrs. H. twenty-one years previously of her contingent or inchoate right of dower to certain lands then sold by her husband. In other words, after said relinquishment the husband goes on for twenty-one years buying and selling, trading and trafficking, the community and the public, meanwhile, never having heard a hint or intimation of any claim of his wife to any settlement on the score of her relinquishment, and then finding himself an insolvent man and she the wife of an insolvent husband, an old draft of a conveyance is hunted up, executed and placed upon record.

3. The deed from Hayward to his wife was, under the circumstances, fraudulent on the part of both, irrespective of any consideration upon which it can be claimed to rest. Under the statute of 13 Elizabeth, re-enacted in this State, a conveyance to defeat the right of creditors must be not only

upon a "good"—which is meant in this statute a *valuable* consideration—but it must be executed *bona fide* and received *bona fide*. 3 Coke, 80; 1 Smith's L. C., 33; 2 Johns-Chy., 48; 11 S. and M., 470; 1 Story's E., § 369; 4 Md., 87; Rice, (S. C.,) 389; 1 Leading Am. Cases, 72; 13 Wis., 460; 19 Texas, 529; 6 Barr, 239; 3 Md. Chy., 349.

"It is not sufficient that a conveyance be upon good consideration or *bona fide*. It must be upon both. And therefore, if a conveyance or gift be defective in either particular, although it is valid between the parties and their representatives, yet it is utterly void as to creditors." Story E., § 353.

A deed not fraudulent at first may afterwards become so by being concealed or not pursued, by means of which creditors have been drawn in to lend their money. 2 Vernon, 251; 2 Johns. Chy., 48; 3 ib., 508.

But proof that a full consideration for the property sold was paid, does not decisively negative the presumption of fraud, for the intention of parties, and not the fact of payment, is the test by which the transaction is to be judged. And a transfer of property with an intent to defraud or defeat creditors will be void, although there may be in the strictest sense a valuable and adequate consideration. 1 Bond, 175; U. S. Dig., Vol. 3, N. S., 305.

So that had this settlement been regularly executed in 1850, when it bears date, with all the requisite forms, the claim of Mrs. Hayward to the lots in 1865 would have been fraudulent even outside of the recording acts. The paper was kept during the whole intermediate time back from the public, in the possession of Hayward or his wife; the trustees did nothing under it, not even receiving it into their possession; taking no steps to record it or otherwise acquaint the public with its existence; Hayward remaining all the while, as before, in the possession of the property and dealing with it as his own.

Can a parol promise from a husband to his wife, either before or after marriage, proved by no other testimony than

that of the wife, sustain a settlement of the husband's property upon the wife not executed until he had become indebted to insolvency, even though that promise was based upon a valuable consideration? I utterly deny the proposition. 3 Johns. Chy., 481; De., G. and J., 76; 2 McCord Chy., 274.

"It is not denied that the husband may make a valid settlement upon his wife in consideration of a portion coming to her agreed to be paid to him, or of her relinquishing any interest in his property, even though that interest be contingent or inchoate, as the right of dower, for instance. But to support such a settlement against creditors whose debts accrued prior to it, the court will require every reasonable proof that the portion was paid or the relinquishment made in consideration of the making of the settlement." Atherly on Marriage Settlements, top p. 83; 2 Lev., 70; 2 Lomax Dig., 333, 334.

In cases of such post nuptial settlements, says Judge Lomax, Vol. 2, p. 334: "If much time has elapsed between the alleged contract and the settlement, there must be clear proof to establish the contract. The recitals of the contract in the settlement are not evidence to support the same against creditors seeking to impeach it."

"The recitals in the deed of settlement are not such proof as the law requires." See note of Chancellor Kent to Read vs. Livingston, 3 Johns. Chy., 507.

Recitals in a post-nuptial settlement, though admissible against the persons claiming under the settler, are not evidence against a creditor by whom the deed is assailed. 12 Grat., 384, 6; 8 ib., 150.

And as to recitals generally: 3 Johns. Chy., 481, 488; Riley's Chy., 236, 219; 1 Iredell, 97, 103; 3 Littell, 427; 12 N. H., 248; 28 Pa., 419; 10 Ala., 137; 16 ib., 725; 5 Rich. E., 335.

"A conveyance for the benefit of a wife in consideration

of dower previously released by her is voluntary as to existing creditors." 19 Mo., 341.

In Lyne vs. Bank of Kentucky, 5 J. J. Mar., 545, the court ask: "Can the reception of an estate by the husband in right of his wife constitute a valuable consideration to support a settlement on the wife years thereafter, when there was no ante-nuptial contract and no agreement to make a settlement previous to reducing the wife's property to possession? We think not. If it could be, there are but few married men who could not, when a change of fortune in after life might suggest the propriety of making family settlements for a valuable consideration in attendance upon which to make ample provisions for the support and maintenance of their wives and children and by consequence of themselves, at the cost and suffering of creditors and their wives and children." See 28 Ala., 442; Rice Chy., 401.

In order to support a conveyance to the wife by the husband on the ground of a previous application of her separate property to his use, it must appear that the advances were made by her on the faith of the anticipated settlement. 3 Eds. Chy., 58; 8 Paige, 161.

What is the presumption when the wife joins her husband in the conveyance of his lands? It is that she does so without compensation. 2 Bush, (Ky.,) 543.

In Hatch vs. Gray, 21 Iowa, 29, the husband collected and received a portion of his wife's inheritance, promising to pay it back to her, with interest. Afterwards he became indebted, and while so paid a part of the money to his wife, which she invested in land, taking the title in her own name. Her title was made to yield to the claims of his creditors, the court saying, "a secret parol agreement between husband and wife will not be supported against creditors whose rights have intervened in ignorance of such agreement."

Rucker vs. Abell, 8 B. Munroe, 568, was the case of a father who, while free from debt, gave land to his son by parol, the son going into possession and making valuable improve-

ments. The father, after becoming indebted, executed a deed, which was held void as to his creditors. 3 Dana, 503 ; 7 Bush, 337 ; 2 ib., 536.

Let us notice some of the cases in which the wife's relinquishment has been held a sufficient consideration for a conveyance or settlement.

In Ward vs. Crotty, 4 Met., (Ky.,) 59, the wife refused to relinquish her dower interest unless she should receive one of the notes given in payment of the land sold. This note was given to her ; she thereupon relinquished her dower ; her claim to the note was sustained.

In Hallowell vs. Simonson, the wife in her answer asserted that she refused to relinquish dower in land sold by her husband worth $3,000, unless certain land should be purchased for her, which was done at the price of $1,200, that she would not have released her dower but for the agreement made in good faith that the property purchased should be her's. See 5 B. Mun., 298 ; 2 Bush, (supra,) 535.

The case of William and Mary College vs. Powell, 12 Grat., 384, is one in which the wife's claim was sustained ; but under what circumstances ? There were the contemporaneous deeds to speak for themselves. As the court say, " res ipsa loquitor."

But what was the decision of the same court in Lewis vs. Caperton, 8 Grat., 148, where the attempt was made to establish the validity of a settlement upon a wife on a recited consideration of the previous relinquishment of her inchoate dower right in the husband's property, with a promise, proved by her testimony and that of others, at the time of her relinquishment, on the part of the husband, to make a settlement ? The court held that her claim must yield to that of her husband's creditors. 11 Leigh, 476, (cited in 12 U. S. Chy. Dig., p. 550,) is the following case : " In consideration of his wife's agreement to release her dower in certain land, a husband settles land upon her, and after a fi. fa. sued out on a judgment recovered against the husband subsequently

to the settlement, she joins him in a deed of land for the purpose of releasing her dower in pursuance of her agreement : Held, that the lands settled on the wife were subject to the execution, and that equity would not restrain the creditor from making his debt out of them." 2 Bush, 535.

In the case of Wicks vs. Clark, *supra,* (8 Paige, 166,) the court distinguish between " a post-nuptial settlement of the wife's property from the ordinary case of a husband making a settlement of his own property, or property which he possesses in his own right, upon his family under similar circumstances. " In such cases," says the chancellor, " there should be the most rigid scrutiny, and the fairness and honesty of the transaction must appear in the clearest light, to induce the court to sustain it." How will the case now before this court stand when thus tested ? And he goes on to lay down the rule rule by which the validity of these settlements may generally be determined : " And I think it may be assumed as a rule that the same circumstances which would induce the court to compel a settlement by the husband will operate to uphold a deed settlement already made to the same extent that would be required if one should be directed to be made under the view of the court." See 1 L. E. Cases, p. 388.

Let us suppose, then, the case reversed, and that Mrs. Hayward were now before the court asking, after twenty years, the specific performance of the alleged promise of her husband to make a settlement in consideration of the relinquishment of her contingent right of dower in the lands conveyed by him, and that he and these complainants as his creditors were defendants in the suit.

The very fact that she has instituted such a suit (and I admit that a court of chancery would have jurisdiction in such case,) would be an answer to her allegation of coverture as a defence against a plea of the statute of limitations. But not only would such a suit be barred four times over by the statute of limitations ; the staleness of the claim and the presumption of its satisfaction would be conclusive

Nalle & Co. v. Lively et al.

against it, even as regards the husband, to say nothing of his creditors.

"Every presumption that fairly can be made shall be made against a stale demand. The very forbearance to make the demand affords the presumption either that the claimant was conscious that it had been satisfied or intended to release it." Story's E., Sec. 1520 ; 2 Vesey, 380.

To the same effect are the decisions of all the courts ; not one announcing the doctrine with more emphasis than that august tribunal, the Supreme Court of the United States. 8 How., 210 ; 1 ib., 169.

What answer, in such a suit, would she make to the defence of the statute of frauds ?

The facts of the following case of Pryor vs. Smith, 4 Bush Ky., are set forth with sufficient distinctness in the U. S. Dig. for 1869, p. 342 : S. sold and conveyed to D. a tract of land, and as a past consideration of the conveyance, D. and his wife conveyed to S. a tract of land which D's wife owned by inheritance from her deceased father. The wife at the time objected to conveying her title, except upon the consideration that she should be secured in the tract conveyed to her husband, but united in the conveyance upon a verbal agreement with him that he would so indemnify her, and under advice that the deed of her husband would vest the land in him in trust for her to the extent of the value of her land : Held, that equity would not decree to the wife an equitable provision out of the land as against the creditors of her husband.

If authorities be needed to show the necessity of recording conveyances of property settled on the wife in advance of the husband's insolvency, I cite among others the following : 1 Grat., 345 ; 5 J. J. Mar. ; 1 Des., 401 ; 2 ib., 266 ; 3 ib., 223 ; Rice Chy., 389 ; McMullen, 373 ; Riley's Chy., 230 ; 22 Texas, 480 ; Iredell R., (1845,) 518.

But it may be urged that the answers of Mrs. Hayward and Austin establish the validity of the consideration for

the settlement. I ask to be referred to a single case in which similar answers to such a bill as this have been held to accomplish such a result.

The court will observe that as to the property conveyed to Mrs. Hayward this is not a bill of discovery. She is not asked to disclose the consideration upon which her claim to the property rests. That consideration is shown by the deed itself, viz.: Past relinquishment of dower, together with natural affection and the formal and nominal consideration of five dollars. The complainants were willing to rest their claim upon the inadequcy of these considerations. Mrs. Hayward, in her answer, comes forward with a new and altogether different consideration, viz.: The *promise* of her husband. Must she not prove that her answer is in response to nothing in the bill and to none of the interrogatories appended thereto?

It is admitted that in appropriate cases where the denials of the answer are responsive to the allegations and interrogatories of the bill, they must be taken as true, unless shown to be false by more than the oath of one witness, (2 L. E. C. p. 11, p. 87,) "on the obvious principle that when the plaintiff has chosen to interrogate the conscience of the defendant, he is not entitled to select those responses which make in his favor, and reject the rest." But "the rights of the defendant in chancery to have his answer taken as evidence is co-extensive with his obligation to answer." 15 Ver., 93.

In the present case the complainants did not choose to interrogate the conscience of Mrs. Hayward as to the point in issue.

The trust deed itself and its own terms, in connection with the admitted facts, prove and establish the complainants' case. The defendant, Mrs. H., attempts to set up something outside of and in addition to the terms of the deed, in avoidance of the charges of the bill, and this something she must prove.

But even were it otherwise, the language of the deed,

with the attendant circumstances, is more than the evidence of two or even than twenty witnesses to establish the fraudulent character of the transactions.

The contract or agreement set up in the answer is alleged to have been entered into between Hayward and his wife, by parol, in 1844; there were no trustees and no witnesses. Now granting, for the sake of argument, that the wife may by herself, during coverture, contract with the husband for his property, what is the kind of evidence required to support such a contract? One of the most respectable tribunals in the land, the Supreme Court of Pennsylvania, has told us, speaking through one of the ablest jurists of any land or any age, Judge Gibson. Referring to the proof furnished by the husband's admissions to establish such a right in the wife, he says : "It is not to be concealed, however, that as a medium of proof such admissions are to be scanned with extreme vigilance, and that to prevent the consequences of misapprehension or mistakes on the part of witnesses, it is necessary that they be deliberate, positive, precise, clear and consistent with each other, not inconsiderate, vague or discrepant, and the testimony to establish them ought to be full, satisfactory and given by impartial witnesses; (1 Barr, 329,) reiterated by the same court in 23 Pa., 460, and in 31 Pa., 450. And such is the rule even where the rights of the creditors are not involved. See also 18 Texas, 21 ; 22 ib., 480.

As to effect of answer in cases of fraudulent conveyances, see 23 How., 476, and 13 Wis., 283.

But it is insisted that the answers of Mrs. Hayward and Austin deny all fraud. Granted. But in doing so they deny no fact; they simply deny a conclusion of the law. It has been repeatedly held that deeds may be fraudulent, even where the parties intended no fraud. Say the Supreme Court of Missouri, in Patter vs. McDowell, (31 Mo., 62,) which was conveyance from husband for his wife, " deeds

may be fraudulent in law as against creditors, even where the parties intend no fraud."

Or it may be urged that even if fraud on the part of Hayward, there is nothing to connect his wife with it. The answer, in the language of the Supreme Court of Texas, (in Castro vs. Illies, 22 Texas, 480,) is : "When the wife is the beneficiary of the deed of conveyance from her husband, which is impeached by his creditors for fraud from the relations of the parties, it is scarcely to be supposed that the circumstances and intentions of the grantor were unknown to her."

But the conclusion, from the recitals in Hayward's deed to his wife, so full and exhaustive, and yet silent on any promise at the time of the relinquishment of her dower that her husband would compensate her by a settlement, is irresistible that there was no promise then made by him, and acted upon by her, to the effect set forth in her answer.

See these recitals set forth below.

"It has been held quite generally," says Professor Parsons, (1 Contracts, 429,) "that when the consideration is expressed in a written contract, no other can be proved, unless there are words which indicate other considerations, because this would be an alteration of the contract by evidence *aliunde*. The same rule is said to be applied in equity unless relief is sought against the instrument on the ground of fraud or mistake."

In the case of Haney vs. Nugent, 13 Wis., 283, a deed from father to daughter, though the consideration was proved by the answer of both, was set aside as fraudulent.

The manner in which H. and wife dealt with the trust property in mortgaging it for his debt, in violation of the express terms of the deed, shows that they regarded it as a nullity.

2. As regards Lively's title, the ground taken by him is in effect that the conveyance to Mrs. Hayward was valid and by consequence as to him was valid ; but that even, if

her's was invalid for fraud, yet that he being a *bona fide* purchaser without notice, his deed must, in any event, be held good. On the contrary, complainants hold that the deed to Mrs. Hayward was void as to Hayward's creditors, and Lively knowing of Hayward's insolvency when the deed to Mrs. Hayward was recorded, and when he took his own, is not an innocent purchaser; but that be this as it may, Mrs. Hayward was only tenant for life, with power of appointment by will, or in some other manner, only to take " effect after her decease," consequently she could not convey the property by deed *inter vivos ;* and that Lively's title, failing on this ground, if no other, the property falls back to Hayward's estate, and should be applied towards the payment of his debts.

Of what had Lively notice ?

First, that Mrs. Hayward's pretended title was by deed which, though dated on April 15th, 1850, was not recorded, nor proved for record until September, 1865, when the grantor was overwhelmed with debt.

Second. He had notice on the face of her deed that she held by a voluntary conveyance, recorded as above stated, when her husband was insolvent, and fifteen years after its date.

Were not these facts sufficient to put him upon inquiry, and cause him to withhold his hand from participation in this series of alienations by which Richard Hayward's property was sought to be placed beyond the reach of his creditors ?'

" Whatever is sufficient to direct the attention of a purchaser to the prior rights and equities of third persons, and to enable him to ascertain their nature by inquiry, will operate as notice." Am. notes to LeNeve vs. LeNeve, 2 L. E. Cases, 116, and cases there cited. Again. Nothing is better established than that the purchaser will have constructive notice of everything that appears on any part of the deed or instruments which prove and constitute the title purchased. Idem. p. 120.

" Such notice, therefore, is of the most conclusive character, and is insusceptible of being explained away or rebutted;" (Idem., same page,) and " will overrule a positive denial of notice in the answer itself." Idem.

On the face of the deed from H. to his wife, it was executed for a past consideration, and merely in reciprocation of previous kindness on her part. It shows no promise made at the time she relinquished her dower to compensate her therefor; on the contrary its amplification of recitals, none of them setting forth such a promise, is conclusively negatively pregnant that there was no such promise made and received at the time as the consideration for such relinquishment.

The title of Mrs. Hayward was only a life estate, with power of appointment by will or other instrument, to take effect after her death. The exact language is " upon trust for the only use, benefit and behoof of H. W. H., wife of the said party of the first part, during and for the term of her natural life, and to such further use as the said H. W. H. may, by her last will and testament or in any other manner appoint, to take effect after her decease."

" The distinction is, perhaps, slight which exists between a gift for life, with a power of disposition superadded, and a gift to a person indefinitely, with a superadded power to dispose by deed or will, but that distinction is established and in the latter case the property vests." 13 Vesey, 453.

"A gift of personal estate to the wife for life, with a direction that after her death one moiety thereof shall be at her entire disposal, either by will or otherwise, amounts only to an estate for life with power of appointment." 4 Rus., 263; 9 Sim., 161; 13 Vesey, 444.

The power vested in Mrs. Hayward could only be executed by a paper in its nature testamentary. Under the common law, certainly under 34 and 35 Henry 8, a married woman could not make a valid will of lands, that statute expressly prohibiting her. 1 Jar. on Wills, 30. And it is extremely doubtful whether in Florida she could have done

it in 1850, (perhaps it is not certain even now that she has the power,) for though our statute of wills, Thomp. Dig, 192, says, "every person of the age of twenty-one years· being of sound mind, shall have power by last will and testament to dispose of his or her lands," yet this language is no broader than that in 32 Henry 8, authorizing every person having lands, &c.,· to devise them, and under that statute, says Jarman *supra*, "it seems to have been the better opinion that a married woman could not make a valid will of lands."

But it seems to have been held always, that though a married woman could not devise her lands without the assent of her· husband, she might, when holding a life estate therein, with power of disposal to take effect after her death, make a valid execution of that power by an instrument in writing, testamentary in its character, whether technically a will or not. 3 Johns. Ch., 523; 6 J. J. Marsh., 573; 4 Kent Com., 506; 1 Red. on W., 28, 29.

And though a married woman, says Chancellor Kent, "cannot be said strictly to make a will, yet she may devise by way of execution of a power which is rather an appointment than a will; and whoever takes under the will, takes by virtue of the execution of the power." 2 Kent, 171.

But whether such a paper, says Jarmin, Vol. 1, p. 36, "be or be not in technical strictness a will, or whether it ought to be termed an instrument in writing,    *    *    * it is allowed on all hands that such a writing, if not a proper will, is at any rates of a testamentary nature, must be executed with the same solemnities as if executed by a person *sui juris*, must receive probate as any other will, and will have the same incidents, and, with some qualifications, a like operation. If the instrument, being to take effect after death, wants validity as a will, it is utterly void."

Redfield is to the same effect: "And where a married woman has power by marriage settlement, or any other valid contract, to dispose of her estate by will or testament-

ary appointment, she can only do so by an instrument of that particular character, and it must be proved as a will." Red. on Wills, Vol. 1, p. 28–9.

It is clear that the conveyancer who drafted the instrument from Hayward to his wife, intending to limit the estate to his wife for life, intending, nevertheless, that she should have the power of disposing of the same after her decease, used words conferring that power with express reference to the doubt above suggested, whether the paper by which that power was to be executed would be in technical strictness called a will or otherwise designated.

The conveyance to Lively is, therefore, not only void, because attempting to convey the property absolutely by deed *inter vivos*, but because that deed could not possibly take effect as a testamentary paper, or as any conceivable instrument in the nature of a testamentary paper, not being attested by three witnesses.

The doctrine of the American courts as established by overwhelming weight of authority, is that the power of the feme covert over her separate property must be exercised according to the mode prescribed by the instrument under which she becomes entitled to the property, and to confine her to that particular mode, the instrument need not specially restrict her to it. 3 Johns. Chy., 77; 4 Md. Chy., 5 Md., 220; 1 Strob. E., 37; 6 Rich. E., 75; 3 Green N. J.

In Wright vs. Brown, (8 Wright, 44 Pa., 224,) a married woman's mortgage of her separate estate was declared void because the deed of settlement did not give the express power to sell or mortgage, and on that subject, said Strong, Justice, (now of the Supreme Court of the United States,) " silence is prohibition."

Much more is the woman powerless when in the instrument settling her estate there are words of restriction.

Thus, says Judge Story, E. J., § 1382, a., " where there was a bequest of money and leaseholds to a feme sole for her own absolute use without liberty to sell or assign during

her life," it was held that she took the property absolutely, but without any power to dispose of it during her life, or in other words, with a restriction against alienation during her life.   See Sec. 1393-4, ib.

A feme covert holding separate property in real estate by deed or will prescribing a particular mode of disposition, cannot dispose of it in any other mode, though the deed or will does not negative any other mode.   4 West Va., 249.

See the following cases :

5 R. I., 121; 8 Humph, 159; 2 Head, 221; 56 Barb., 600; 9 Ga., 199.

But it may be replied that the conveyance to Lively is only such a defective execution of a power as a court of chancery will aid.   I answer that the proposition can hardly be maintained that chancery will undertake to give validity to a will executed in the teeth of the requirements of the statute.   Can chancery aid a will purporting to be executed under a power of devising real estate, when the pretended will is attested by but two witnesses ? The question answers itself.

But further :  The law in regard to powers is settled. That that if the power should be executed by a deed, and it is executed by a will, the defective execution may be aided; but if the power ought to be executed by a will and the donee of the power should execute it by deed, it will be invalid. 1 Story E. J., Sec. 173 ; 2 ib., Sec. 1393; 10 Vesey, 378 ; 2 Stro., 231.

And as to the strictness with which the conditions annexed to a power are required to be executed, 4 Kent, 330, 331 ; Adams E. top. p. 228.

Says Chancellor Kent (Vol. 4, p. 331,) "It is the plain and settled rule that the conditions annexed to the execution of the power must be strictly complied with, however unessential they might have been if no such precise directions had been given   They are incapable of admitting any equivalent or substitution, for the person who creates the

power has the undoubted right to create what checks he pleases to impose to guard against a tendency to abuse. The courts have been uniformly and severely exact on this point. If a deed be expressly required, the power cannot be executed by a will; and if the power is to be executed by will, it cannot be executed by any act to take effect in the lifetime of the donee of the power."

If it is said equity should aid in case of a purchaser like Lively, the reply is, it will never aid a purchaser as against a creditor; for the latter is as much a favorite of a court of chancery as the former.

And in the case of Bentham vs. Smith, 1 Chevers 38, (2 U. S. E. Dig., p. 470,) equity refused to aid a purchaser, even as against children of the donee of the power. In that case land was conveyed in trust for A. during his natural life, and after his death to such persons as he should by writing in the nature of his last will appoint, and in default of appointment to his children. A. mortgaged the property and died insolvent and intestate, after foreclosure of the mortgage. Under bill by the purchaser under the mortgage, it was held that the children of A. could not be restrained from enforcing their claims in remainder.

What possible claim has Lively to the assistance of a court of chancery? None whatever.

The conclusion then is, as regards respondent Lively, that be the rights of Mrs. Hayward and her devisee, Harriet Forte Hayward, what they may, Lively's claim can be maintained only by the subversion of all the legal principles involved in the case.

*M. D. Papy* for Appellee.

We maintain—

1. That relinquishment of dower by a wife is a good consideration and valuable to support a subsequent settlement of property on her. 4 Dess., 227; 3 Paige, 440 ; 2 Bush, 535.

This is admitted by complainant's counsel, but he quali-

fies it by saying that the agreement to settle must be made at the time of the relinquishment and from the consideration for the act by the wife, otherwise the subsequent conveyance is voluntary, and if voluntary, void as to creditors.

If the subsequent settlement is made merely because the wife had formally relinquished, and not because in addition the husband at the time had promised to make the settlement, then as a voluntary settlement it is only void as to existing creditors, and is not to be impeached by subsequent creditors. In this case we aver that the settlement or trust deed was made in consideration of the relinquishment by Mrs. Hayward of her dower, which was done on a promise made at the time, and in consideration of such relinquishment that he would afterwards settle the property on her. This appears by the direct answer of Mrs. Hayward, which is directly responsive to the bill and is not disproved. The recitals of the deed of trust, taken in connection with the answer of Mrs. Hayward, sustain this, for there could have been no reason why this recital should have been made, unless it was in fulfilment of his antecedent promise and agreement; for the conveyance, as a voluntary deed, would have been good on the simple consideration of natural love and affection, and which alone would have been used unless the deed was in fulfilment of this antecedent promise, and hence the consideration of relinquishment was expressed. Without the precedent promise, this expression would have been no consideration at all, or anything than love and affection. The particularities in mentioning this land, in which the dower was assigned, plainly indicates this, for her relinquishment of dower in other lands, of which no doubt she made many, was not referred to at all. Why? Because it was for the relinquishment on this land that the promise of the after settlement was made.

The agreement admits that whatever is said in the bill and answers, not in conflict with the matters agreed on, is true. Nothing in the agreement contradicts the allegations

in the answer on this subject, and hence these allegations must be taken as true.

In this view of the question, then the deed of 1850, from Hayward to trustees, for the benefit of his wife, is good upon valuable considerations and cannot be impeached by the complainants. Even if not effectual at law to pass the legal title for want of witnesses at the time, it is, nevertheless, good as a covenant to stand seized to uses which a court of equity would enforce. A court of equity will likewise give effect to the paper for the purpose for which it was intended, because it regards that as done which ought to have been done according to the intention of the parties.

But as Hayward subsequently had the deed properly attested, and it was admitted to record before any lien attached in favor of complainants, the deed became effective even at law, and all right under it related to the time of its execution and delivery.

But if the deed was purely voluntary, we say that as it was delivered at the time it bears date, and possession passed under it, the rights of Mrs. Hayward became in equity perfect, because it was executed and delivered for the purpose expressed in it, and that although at law the legal title did not pass, yet as in equity the right vested, the completion of the deed, so that it operated at law before any lien attached, operated to complete the transfer and make that good which ought to have been made good when the deed was first executed, but was not by mistake or inadvertance.

Hence the conveyance in this case is not to be regarded as a settlement made in 1868 but as made in 1850, when there is no pretence it could not have been made as a voluntary conveyance. Then it is good against the complainants. Where a deed is found in the possession of the grantee, the presumption of law is that it was delivered when it bears date, and if a party alleges the contrary, he must prove it.

So here the deed is presumed to have been delivered to Mrs. Hayward at the time it bears date; the allegations to

the contrary are not proved.    She is not obliged to prove what is already presumed.

Her answer to the bill attacking this deed is responsive to it, and is not, either in fact or in law, matter *aliundi* or new matters in avoidance of the allegations of the bill, which she is bound to prove.    As it is responsive, it must be taken as true, because not disproved and not in conflict with anything in the agreement.    See Souverbye vs. Arden, 1 John. Chy., 240.

2. If Mrs. Hayward could not make a mortgage, the objection would have no effect here, for it would only result that the mortgage was void; thus no forfeiture.    16 Vesey, 138. The mortgage was not in execution of the power, but only of rents and profits, &c.    But she could legally make it, because in doing so it bound her life interest only.    Her right to mortgage her estate is not doubted.

The execution of the power in this case is not confined in the manner of doing so to a will.    It may be done by deed by the terms " or in any other manner."

If it can be done in any manner she might adopt, then the effect is to be ascertained by learning what was her intention.

If the deed to Lively was intended in execution of the power, as is clear from the fact that the deed recites the power and is in form to accomplish that which the power authorizes to be accomplished, then it follows that the intention to accomplish the result is established, and it need not express the effect or result which it does in fact accomplish.    See Washburn on real property, 319 and 320; 7 Penn., (Barr.) 530; 18 Missouri, 229; 2 Vesey, 593.

But if the execution of the power is defective, equity will aid it, for though equity does not interfere in the non-execution of a power, yet it will aid it by executing what the donee wished to do but failed to accomplish. 5 Florida, 79; See 2 Washburn, 334.

Especially should this be done when the execution of the

power here is for a valuable consideration. This is all shown in Mrs. Hayward's answer, where she says she made the conveyance in execution of the power, or words implying the same thing.

Lively is not concerned in the question as to whether the deed was voluntary or not. He took as a *bona fide* purchaser without notice. He is only concerned in the question as to the execution of the power.

A voluntary deed from a man who is not indebted at the time, is not void against subsequent creditors. 8 Wheat., 229.

Now Mr. Lively had notice of what? The record disclosed to him that a deed was executed fully in 1850. The record was not necessary to complete the title. The record was to protest against subsequent purchasers or creditors, and being recorded before any other deed, or judgment, or lien attached, protects it. There were no existing creditors in 1850; no pretence that the deed was in fraud of such. Then the deed, even if voluntary, was good, and if good, the subsequent insolvency could not affect it; and if good, then anybody could buy the property and take a good title. Even if Lively had not bought, Mrs. Hayward herself could set up the deed as against these complainants if it was good at its date; and so far as Lively is concerned, it must be considered as fully executed in 1850. And if so, then it was good as a voluntary deed even, and Mrs. H. could sell and Lively could buy, and any subsequent indebtedness of Hayward could not affect it one way or the other.

An estate for life, with an unqualified power to appoint the inheritance, comprehends everything. By her interest she can convey the life estate. By this unlimited power she can convey the inheritance. The whole equitable fee is subject to her disposition. 16 Vesey, 138; 19 ib., 86; 2 ib., 594.

A deed defective for want of the necessary formalities to enable it to pass the legal title, is, nevertheless, good as a contract or covenant to stand seized to uses or as a trust, as

the exigencies of the case may require. Perry on Trusts, 66 ; 5 John. Ch., 224 ; 10 Grattan, 259 ; 1 Dallas, (S. C. of Penn.,) 435.

Where the settlement is in favor of the wife, the consideration is meritorious and equity will enforce it, when it would not as against a stranger who is a volunteer. 10 Grattan above cited ; 1 John Ch. 336.

A conveyance of land, though not registered, if made *bona fide* and for valuable consideration, is good against creditors. 2 Stewart, 488.

And if placed on record before any lien attaches, it cannot be overcome by any subsequent purchaser.

The case relied on from 21 Iowa is maintained not to be applicable. The principle there decided is not contested here, but there the husband gave his wife money long after the alleged promise to her was made, and when he was not only indebted but insolvent. What was this but a settlement at a time when the husband was indebted and insolvent ? How does that case apply here, when the settlement was made years ago and when the husband was competent to make it, and which was only imperfect as a deed at law but good in equity, and which was perfected before any lien attached, and under circumstances that if not voluntarily done by Hayward, a court of equity would have compelled him to do ? The counsel on the other side ignores everything anterior to the date of the record of the deed, and herein consists the mistake into which he has fallen.

Lively could not know anything except what the record disclosed, and that disclosed a good deed executed in 1850, as he could not know that it was not witnessed until the date of the record. That is all the notice he had, and he can be bound by nothing else. Suppose that he did know that at the date of the record of the deed Hayward was insolvent, how could that insolvency affect the validity of an apparently and, so far as Lively knew, a good and perfect deed executed in 1850, when Hayward was perfectly com-

petent to make it? No authority can be produced, it is respectfully maintained, to support such a proposition. If the principle is maintained, few persons would be disposed to buy property.

In Hall vs. Wilson, 8 or 6 Wallace, the Supreme Court of the United States say, a man is not to be considered as having notice when he did not have notice, but when he is to be affected by constructive notice, it is not that he is to be affected for want of due diligence, but only for gross negligence. What was there here to put Lively on equity? Nothing, for the record at a late date means nothing except that the grantee omitted to do it, and there is no law which attaches any other consequence to the omission, than it should give way to other conveyances or liens which may have attached in the meantime. His only inquiry was, then, whether there was any subsequent deed or judgment or lien between the date of the deed and the record, and finding none, he could legally buy and is protected, and there is nothing else he is required to inquire about.

The question of the statute of limitations by the possession of Mrs. Hayward for the sufficient length of time prior to 1860, is presented on the record as a defence. It is not specially argued in argument, because it is believed the other questions are conclusive of the case.

FRASER, J., delivered the opinion of the court.

On and previous to the 15th of April, 1850, Richard Hayward was the owner in fee simple of a lot of ground in the city of Tallahassee, at which time he was a man of large means, entirely solvent, and abundantly able to make the conveyance next mentioned, without affecting his solvency or impairing the claim of any creditor, and on that day he executed a writing in the form of a deed, without witnesses, purporting to convey to Robert S. Hayward and Thomas H. Austin the said land, " in trust for the only use, benefit and behoof of Harriet W. Hayward, wife of the said party of

the first part, during and for the term of her natural life, and to such further use as the said Harriet W. Hayward may, by her last will and testament, or in any other manner, appoint, to take effect after her decease," with the covenant that the land conveyed should not be " subject to or for any of the debts, contracts or engagements of her husband, and that the same shall remain and continue in the possession and under the control of the said Harriet W. Hayward, and be subject to the control and direction of no other person whomsoever."

It is recited in this writing that in the years 1844 and 1845, Harriet, the wife, in order to enable her husband to pay certain debts, released her right of dower in sundry tracts and lots of land, sold by her husband for that purpose. This paper, expressed to be in consideration of such relinquishment of dower, was delivered by said Richard to said Harriet, April 15th, 1850, but was not witnessed and admitted to record until September 13, 1865, at which last date Richard had become insolvent. The paper was then subscribed by two witnesses, proved and recorded. It is agreed by the parties that the recitals in this deed, with respect to the relinquishment by the said Harriet of her dower in sundry lots and parcels of land therein described, are true.

Robert S. Hayward, one of the trustees, died in or about 1852.

August 9th, 1866, in consideration of a debt of $4,100, due from Richard to Elizabeth G. Hogue, wife of William S. Hogue, and to secure its payment, Richard and Harriet, his wife, executed their mortgage upon the south half of the lot mentioned.

Richard died in January, 1867.

May 20th, 1868, Hogue and wife assigned the mortgage to Mathew Lively, and on the same day Harriet, being then a widow, joined with her surviving trustee, Austin, in

a deed to Lively for the south half of the lot in question, being the part covered by the mortgage.

This last deed purports to be in execution of the power contained in the deed of trust.

It is agreed by the parties that the matter set up in the answers of the defendants, or either of them, responsive to or explanatory of the bill of complaint, are true, unless overcome by proofs according to the rule of evidence in chancery.

The complainants charge in their bill that the consideration of the deed from Richard, in trust for his wife, was altogether voluntary, and that no money or other thing of value passed between the parties as the consideration therefor.

Mrs. Hayward answers that the deed of trust was not a mere voluntary deed, but for a valuable consideration, and sets forth the consideration to have been her previous relinquishment of her dower in certain lands, and was in fulfillment of an agreement between her and her husband at the time of such relinquishment; and she explains the particulars of the agreement then made between her and her husband.

Harriet, the widow, died December 17th, 1869, having first made her will, by which she devised to her granddaughter, Harriet Forte Hayward, the property conveyed by Richard to trustees for the uses mentioned in the deed of trust.

The complainants, judgment creditors of Richard, filed their bill in the Circuit Court of Leon county, to set aside, amongst others, the foregoing conveyances, as fraudulent against them, and insisting that the lot in question and other lands not involved in this appeal, are liable to the payment of their judgment, which was rendered August 3, 1868, and on which execution was issued and returned *nulla bona.*

The lot of land mentioned is all that is in question on

this appeal, and the only parties interested are the administrator of Harriet W. Hayward, Mathew Lively, who claims the lot as purchaser in the manner stated, and Harriet Forte Hayward, the devisee of Harriet W.

The court below made a decree dismissing complainants' bill as to these defendants, from which decree the complainants appeal.

The first question to be considered is, what is the effect of the deed of trust from Richard to Austin and Hayward, trustees for his wife?

Complainants insist that this deed was a voluntary conveyance, without consideration, and therefore void as to creditors, and so charge in their bill of complaint. Mrs. Hayward answers that there was a valuable consideration, and states it to be, that in the years 1844 and 1845, she relinquished her dower in certain other lands, upon the promise made her by her husband at the time that he would settle upon her other property, and the complainants have agreed that this answer is true, if responsive to or explanatory of the bill, unless they should overpower it with other proof.

No evidence was taken in the cause. The question, therefore, is, whether this answer is responsive to or explanatory of the bill?

This response to the charges in the bill amounts to such a direct and absolute denial, that it should seem superfluous to attempt to prove by argument that it is responsive. One says there was no consideration ; the other responds there was a consideration, and explains particularly what that consideration was, the charge and the response, the assertion and denial, operating one directly against the other.

But it is urged that such a relinquishment is not a valuable consideration. That it is a valuable consideration, and will support a subsequent settlement upon the wife, we have abundant authority. 4 Dessau., 227; 3 Paige, 440.

In Woodson vs. Pool, 19 Mo., 344, and one of the cases

relied on by complainants' counsel, the court say, "there can be no question but that a wife's relinquishment of her dower is a sufficient consideration to support a suitable conveyance to her for such relinquishment," and in that case the wife failed to sustain the conveyance to her only for want of proof of such consideration, for in such case it is necessary that the proof be clear.

In Wickes vs. Clark, 8 Paige, 163, it is said that "in order to render these advances of the wife's property a consideration for the subsequent settlement of the husband's property upon the wife, it should appear that there was either an agreement between the husband and wife at the time the advances were made to secure her by settlement, and such an agreement as would be obligatory upon him to perform, or that her parting with her property, or incumbering it for her husband's benefit, was intended to serve as a consideration for a settlement to be afterwards made by him, and that the deed of settlement, when executed, had reference thereto; in short, that there was some connection between the previous advances and the subsequent deed."

In the present case, it appears that Mrs. Hayward did give a valuable consideration; that there was an agreement between her and her husband, at the time she relinquished her dower, obligatory on him to perform; that the deed of trust was executed in reference thereto, and it does not appear that the one was not a fair equivalent of the other. The deed of trust, therefore, is valid against creditors.

It is evident, that as the deed of trust gave to Mrs. Hayward only a life estate, with a power of appointment, a trust resulted of the residue to the grantor, Richard Hayward, liable to be divested upon the appointment being made in accordance with the power.

The mortgage executed by Hayward and wife to Hogue, being in direct violation of the terms of the trust, is void.

Mrs. Hayward could not encumber this estate for the debts of her husband; it is expressly prohibited by the

terms of the trust deed, and as the mortgage was of no validity, the assignment thereof to Lively is of no avail to him

The attempted execution of the power by Mrs. Hayward and her trustee by the deed of May 20, 1868, to Lively, is also inoperative. A power, directed to be executed by will, cannot be executed by deed, and this trust expresses clearly that the execution must be by a writing in its nature testamentary, or such as shall take effect after the decease of Mrs. Hayward. A deed takes effect *in presenti*, a will can only take effect after the decease of the testator. In Sugden on Powers, Vol. 1, (marg.) 256, it is clearly laid down, upon abundant authority, that a power to be executed by will cannot be executed by any act to take effect in the lifetime of the donee of the power, and which we understand to be the settled doctrine.

It will, therefore, be seen, that while the complainants cannot make the lot in question liable to the payment of their judgment, Lively acquired no title by virtue of the mortgage, nor by the deed of Mrs. Hayward to him, and Mrs. Hayward having executed the appointment by will, the resulting trust to Richard Hayward and his heirs was thereby divested.

It is adjudged that the decree of the court below, so far as it dismisses the complainants' bill of complaint as to the parties therein named, be affirmed, and that in so far as said decree in any manner affects the rights of property of Harriet Forte Hayward, that it be set aside.

The following petition for re-hearing was filed by counsel for appellants :

The appellants, by their counsel, *R. B. Hilton*, apply for a re-hearing in this cause, and for reasons therefor set forth the following :

It is respectfully submitted that the court over-estimated the force and effect of Mrs. Hayward's answer, in connection with the agreement entered into by the counsel of the

parties. That agreement was intended to obviate the necessity of taking testimony in reference to all points upon which the parties concurred as to the facts: such as, that Mrs. Hayward did, in fact, relinquish her right of dower in certain lands of her husband in 1844; that her husband was unembarrassed in 1850, at the date when the deed of settlement was drafted, &c., &c. As to other facts or allegations, the intention of the parties, in entering into the agreement, was to leave those facts and allegations to be determined under the pleadings and proofs in the case, in accordance with the "rules of evidence in courts of chancery." It was not imagined by the counsel of the plaintiffs, that in entering into that agreement that he was consenting to give to the answers of the defendants, or either of them, any other force and effect than that to which they were entitled under the rules of chancery. Nothing more than this was contended for by the counsel of the defendants, either in the court below or in the Supreme Court. Mr. Peeler, the counsel who drafted the agreement, at the argument below expressly disclaimed any purpose to give to the terms of the agreement any other signification than this. It is very respectfully urged that it was an inadvertence on the part of the Judges of the Supreme Court to have made the answer of Mrs. Hayward conclusive in defeating the claims of the plaintiffs; and that the court thus gave to it a degree of weight to which it was not entitled, "according to the rules of evidence in chancery."

In an allegation of "fraud" in a bill in chancery, an answer denying fraud generally amounts to nothing. The question must be determined by the facts and circumstances and law of the case.

Mrs. Hayward's answer alleges a "promise" of her husband at the time of her relinquishment of dower to make a settlement upon her. The bill does not deny such a "promise;" it says nothing about a "promise," one way or the other. What, therefore, she says about this alleged "prom-

ise " is new matter on her part, in no wise responsive to anything in the bill. It was something of which, if true, in order to avail herself it was incumbent upon her to prove. Especially was this so, inasmuch as the very recitals of her deed by their silence on this point, while so full on others, gave contradiction to the allegation of a " promise."

It is further submitted, with great deference, that the decision of the court in Woodson vs. Pool, 19 Mo., 341, was directly in conflict with that announced in the opinion of this court. The head note in the Missouri case is as follows :

" A conveyance for the benefit of a wife in consideration of dower, *previously* relinquished by her, is voluntary as to existing creditors."

(The word " previously " is italicised in the report.)

The head note, in the case at bar, is as follows :

" A relinquishment of dower by a wife, for the benefit of her husband, is a sufficient consideration for a *subsequent* settlement upon her by him."

The Missouri court say, in the course of their opinion, " if the right to dower has already been assigned, a conveyance in consideration of such an act previously done would be voluntary as to existing creditors."

It will be remembered that Mrs. Hayward's assignment of dower in her husband's lands was in 1844, while the settlement made on her by her husband, in (alleged) consideration thereof, was not executed and recorded until 1865, twenty-one years subsequent ; and that her husband, at the date of its execution, was utterly and overwhelmingly bankrupt.

It does not appear from any portion of the opinion of the court read in this case, that they considered the effect of this very protracted interval which elapsed between the date of the two transactions.

The vital question in the case, in the view taken of it by counsel for complainants, was, whether a husband, after

holding himself out for twenty-one years as the owner of valuable property, and obtaining credit as such owner, could then defeat the claims of his creditors by conveying the property to his wife for and upon a consideration which had passed and been executed twenty-one years previous, thus providing for his wife, children and himself, at the expense of his creditors and their wives and their children? Upon this point, (necessary, it is submitted, to a decision of the case,) the court (doubtless inadvertently,) omitted to pass, and that "omission" is assigned as one of the grounds upon which a rehearing is humbly prayed.

To hold such conveyances and family settlements valid, whether based upon a "promise" or not, (made twenty-one years before) it is submitted, would be opening the very flood gates of fraud.

It will be observed, by reference to the opinion of Mr. Justice Fraser, that he takes no notice of the elementary authorities, Atherley and Lomax, cited by appellants' counsel, nor of the cases in the Virginia reports, (Grattan,) the Kentucky reports, (Bush especially,) the Iowa and Pennsylvania reports, the South Carolina cases in McMullan's reports, in Rice's reports, and in McCord, all cited in appellants' brief; and all inconsistent, as petitioner humbly believes, with the conclusion of this court, as to the validity of Hayward's settlement on his wife when brought in conflict with the rights of his creditors. The petitioner feels bound to believe that a careful examination of these authorities and cases will bring the court to a different conclusion.

The decision of this court is, that all the property in controversy, embracing the lots on which were erected two stores, belongs to Harriet Forte Hayward, as devisee of her grandmother, Harriet W. Hayward. Mrs. Hayward's will bears date some time anterior to her conveyance to Lively. By that conveyance she sold or attempted to sell to Lively one-half of this property. As to that half, it is submitted that the deed to Lively was a recovocation of the will, and

that as to that half, Mrs. Hayward died intestate. She, therefore, as to that not having executed the power of appointment, given to her by the terms of her husband's settlement, it falls back into and becomes a part of her husband's estate, and is subject to the judgment of the complainants. As the conclusion arrived at by this court, in awarding all the property to Mrs. Hayward's devisee is one not mooted in the court below, or in the argument of counsel on either side in this court, it is respectfully prayed that an opportunity may be given for argument upon the questions involved in that conclusion.

All of which is respectfully submitted.

On which petition, RANDALL, C. J., delivered the opinion of the court as follows:

The counsel for appellants presents a petition for a rehearing in this case and submits that "the court over-estimated the force and effect of Mrs. Hayward's answer in connection with the agreement entered into by counsel for the parties. That the agreement was intended to obviate the necessity of taking testimony in reference to all points upon which the parties concurred as to the facts," and as to other matters and allegations, the intention of counsel was "to leave them to be determined under the pleadings and proofs in the case in accordance with the rules of evidence in courts of chancery." And it is urged that it was an inadvertence on the part of the justices of this court to have made the answer of Mrs. Hayward conclusive in defeating the claims of the plaintiffs, and that the court gave to it a degree of weight to which it was not entitled according to the rules of evidence in chancery. The counsel further says: "To an allegation of fraud in a bill in chancery, an answer denying fraud generally, amounts to nothing. The question must be determined by the *facts and circumstances* and law of the case. Mrs. Hayward's answer alleges a 'promise' of her husband *at the time* of her relinquishment of dower to

make a settlement upon her. The bill does not deny such a 'promise;' it says nothing about a promise one way or the other ; what, therefore, she says about this alleged *promise*, is new matter on her part in no wise responsive to anything in the bill. It was something of which, if true, in order to avail herself, it was incumbent upon her to *prove*."

I. The agreement referred to is a stipulation signed by all the counsel in the case, and which, with the bill, answers and exhibits and copies of the conveyances referred to therein, were the only evidence submitted to the Circuit Court upon which the decree was made. This agreement, after enumerating sundry facts agreed upon, concludes thus : " And it is further understood and agreed that nothing herein contained is to preclude the defendants from insisting upon any other matter of defence set up in either of the answers herein, except in so far as is inconsistent with this agreement, and that the matter set up in the answers of the defendants, or either of them, *responsive to or explanatory of*, or in admission of the allegations of the bill of complaint, not inconsistent with this agreement and the admissions herein made, *are true*, unless *overcome by proofs* according to the rule of evidence in courts of chancery with respect to the effect to be given to an answer."

Now, it seemed to the Circuit Court that the answer of Mrs. Hayward, in so far as it alleged a valid consideration for the conveyance to her by her husband of the real estate mentioned, was directly " responsive to and explanatory of the allegations of the bill of complaint," and therefore that her answer as to the validity of the conveyance and the absence of fraud in the very transaction which the bill alleged to be fraudulent.

This court also examined this feature of the case and came to the same conclusion, that that part of the answer of Mrs. Hayward was responsive to the allegation of fraud contained in the bill.

The bill alleges that the conveyance by Hayward to the

Nalle & Co. v. Lively et al.

trustees for Mrs. Hayward's use was voluntary, no real consideration having passed, that it was never delivered, that it was kept secret and in the possession of Richard Hayward from 1850 to 1865, and that its intent and purpose was "illegally to hinder, delay and thwart the creditors" of Richard Hayward.

Her answer, not only denying the fraud in express terms, but alleging facts which of themselves nullify the imputation of fraud, it seemed to us, was the subject of the stipulation of counsel, not alone as to its denials, but as to its allegations of matters of fact constituting a part of the transaction, and therefore *necessarily* "responsive to and explanatory of the allegations in the bill." I understood, as I now understand, that the purpose of the stipulation was to avoid the trouble and expense of taking testimony, and to present the facts in issue to the court, not only such facts as to which there was no disagreement between the parties, but such other matters as were responsive to the allegations of the bill or explanatory thereof; all which are admitted to be "*true*, unless overcome by proofs according to the rules of evidence in courts of chancery with respect to the effect to be given to an answer." We conceived that a statement in the bill, that a transaction was fraudulent, and that it occurred under certain circumstances tending to show it to be so, was directly responded to and explained by a recital of all the circumstances *under which the identical transaction occurred*, and which tended to *disprove the fraud alleged*, and that the stipulation that such counter allegations should be taken as true, unless disproved, required of the party holding the affirmative of the case to meet the counter allegations by something more than a reiteration of the charge with no rebutting proofs.

The party, by the stipulation, undertook to disprove all the allegations in the answer which were responsive to the charge that the conveyance was voluntary, without con-

sideration and fraudulent, or to stand by the effect of the answer if he failed to disprove it.

The inquiry of the bill is as to the validity of the consideration of the conveyance. The answer discloses the entire consideration. It refers to no other transaction than that which was the direct subject of the inquiry.

The rule is explained in a case before Lord Chancellor Cowper in 1807, reported in Gilbert's Law of Evidence, p. 45. It was the case of a bill by creditors against an executor for an account of the personal estate. "The executor stated in his answer that the testator left 1,100 pounds in his hands, and that *afterwards*, on a settlement with the testator, he gave his bond for 1,000 pounds, and the other 100 pounds was given him by the testator as a gift for his care and trouble. It was resolved by the court that the defendant must make out by proof what was insisted on by way of avoidance. But if the admission and advoidance had consisted in the single fact that the testator had given him the 100 pounds in the first instance, the whole must be allowed, unless disproved."

The gist of the rule is, that if the answer refer to and explain the particular transaction or consideration to be inquired of, it will stand until disproved.

Chancellor J. Savage, in Murray vs. Blatchford, 1 Wend., 618, says : "The main question in this case is the question of fraud. The bill charges that the defendants acted fraudulently and in bad faith, and in relation to the defendant Murray, several facts are charged as evidence of the fraud. Among these are attempts to delay a decision of the cause, by appeals to this court. He twice appealed, and at each time suffered the appeal to be dismissed. This is admitted by Murray, but he declares that the appeals were brought *bona fide*, with an intention to have them argued and decided by this court, but that his counsel advised to the course which was adopted. The counsel, after the appeals brought, were of opinion that after certain other steps should have

been taken in the cause, the errors which they were advised existed would be more apparent.     The answer is given under oath, is responsive to the bill, and is not contradicted. It must, therefore, be taken to be true, and, if true, *rebuts the idea of fraud.*"     And Judge Story has this language : "The plaintiff calls upon the defendant to answer an allegation of fact [of fraud] which he makes ; and thereby he admits the answer to be evidence of that fact.     *     *     * Not only is such an answer proof in favor of the defendant as to the matter of fact, of which the bill seeks a disclosure from him, but it is conclusive in his favor, unless it is overcome by satisfactory testimony." (Story Eq. Jur., § 1528, and citations.)

The counsel for appellants says that the bill says nothing about the "promise" made at the time of the relinquishment of dower to convey or to make a settlement upon her, and that, therefore, what the answer says about a "promise" is new matter on her part, and in no wise responsive to anything in the bill.

We have duly considered this suggestion, but as the inquiry of the bill is to the question of fraud in the whole transaction, the charge being that the conveyance was voluntary and without real consideration, we cannot see that it is otherwise than directly responsive to the charge, and in the language of Chancellor J. Savage, "rebuts the idea of fraud."     Nor do we discover that her allegation gives either a direct or indirect contradiction to the recitals in the deed of trust ; it is cumulative and consistent with the recitals.

II. Counsel for appellants, in his petition, submits that the opinion of the court in this case is directly in conflict with that in Woodson vs. Pool, 19 Mo., 341 ; and quotes the head note of the opinion in each case to show the discrepancy.

But we must be pardoned for suggesting that the head note in this case, as originally written, may not give the entire scope of the opinion, and it may be necessary to make

some verbal change in it, and we must further submit that on examination of the opinion in this case, it will not be found that there is anything in it in conflict with that in Woodson vs. Pool. We dealt with this case as we found it in the record, and the Supreme Court of Missouri decided that case upon the record before it.

The circumstances of that case were widely different from those in the case at bar. In that case there was no contemplation of a subsequent settlement at the time of the relinquishment of the dower, but it was evident that the recital of the former relinquishment as a consideration of the conveyance to his wife was a mere attempt to save the property of the husband from his creditors.

Counsel for appellants, in his brief, says : "It is not denied that a husband may make a valid settlement upon his wife, in consideration of a portion coming to her, agreed to be paid to him, or of her relinquishing any interest in his property, even though that interest be contingent or inchoate, as the right of dower for instance. But to support such a settlement against creditors, whose debts accrued prior to it, the court will require every reasonable proof that the portion was paid, or the relinquishment made in consideration of the making of the settlement." (Citing Atherley on Mar. Settlements, 83.

The conveyance in the case at bar was not merely a "voluntary settlement," but was made for a valuable consideration, in pursuance of an agreement made at the time the consideration was received ; was made in good faith, and without notice of any fraudulent intent of the grantor.

This case differs also from the circumstances of that of the Bank vs. Mitchell, Rice's Eq. R., 389, cited by counsel. The conveyance in that case was made in consideration of an agreement which was, by express statute, void as to creditors. The court say that they were inclined to support the conveyance, but that to do so would be, in effect, to write "repealed" on the statute.

The other cases referred to by counsel, with the remark that the justice who delivered the opinion failed to take notice of them, and that the opinion is inconsistent with them, were examined before the opinion was written, and have been read since with reference to the petition for rehearing, but we fail to see that they are very like the present case, or that the principles announced in them would lead us to a different conclusion.

Lord Chancellor Hardwicke, in Ward vs. Shallet, 2 Ves. Sen. 16, says: " To be sure it is the duty of assignees under the commission to endeavor to increase the estate for the benefit of creditors, and to inquire into any family transaction, especially between husband and wife, which is liable to most suspicion. But the court must not carry it so far as to set aside an act for a valuable consideration, and if this was to prevail, it is one of the hardest demands I ever saw."

(The case was one in which the wife had a contingent interest in a bond given by the husband, which she relinquished, in consideration of which a settlement was made upon her and her children.)

Mr. Atherley says: " It may perhaps be thought that a husband and wife cannot contract with each other, and, consequently, that a post-nuptial settlement, which arises out of an agreement between husband and wife, must be purely voluntary. We shall find, however, that this is not the case, but that settlements, resting on such agreements, have frequently been held good. Nor have they been hastily supported. In the case of Lady Arundel vs. Phipps, (10 Ves., 148,) Lord Eldon expressly adverted to it, and clearly held 'that a husband and wife, after marriage, could contract for a *bona fide* and valuable consideration for a transfer of property from the husband to the wife, or to trustees for her, and that the doctrine was so, both in equity and at law.' And the point also appears to have been adverted to by Lord Hale, in the case of Clark vs. Nettleship, 2 Lev.,

149. * * * In inquiring into the validity of post-nuptial settlements, the true and only point of inquiry, I conceive, is, whether the settler has received a fair and reasonable consideration for the thing settled, so as to repel the *presumption* of fraud." (Atherley on Mar. Sett., 161.)

The case of Reade vs. Livingston, 3 Johns. Ch., 481, was upon a settlement made in pursuance of a parol agreement made with the wife's father in contemplation of marriage, and the settler was indebted at the time of the conveyance, the marriage having taken place in 1791 and the settlement in 1805, of property of great value. The chancellor held the settlement to have been voluntary as to creditors, and the whole discussion of the opinion is upon the subject of *voluntary* settlement; but the chancellor takes occasion to endorse the treatise of Mr. Atherley in the strongest terms, and puts the case upon this point, stated by Atherley, that a "settlement after marriage cannot rest its validity as against creditors, on a mere parol agreement before marriage."

In the case of Lewis vs. Caperton, 8 Gratt., 150, cited by petitioner, there was no proof whatever of an agreement for a settlement in consideration of the relinquishment of dower, but, as the court remarks, only proof of casual conversations between the wife and other persons; and the court emphasizes the fact, that there was no such agreement, and the relinquishment was purely voluntary.

And W. and M. College vs. Powell, 12 Gratt., 385, says, distinctly, that a post-nuptial settlement, in favor of a wife, made in pursuance of a fair contract for a valuable consideration, will be held good, is a doctrine supported by abundant authority; and although it may have been made under such circumstances that it must be pronounced fraudulent and void as to the creditors of the husband, yet, if the wife has relinquished her interest in property on faith of such settlement, it will be held good to the extent of a just compensation for the interest which she may have parted with,

and this, though the settlement may have been made subsequent to the relinquishment.

We cannot close this part of the case in better language than that used by the learned Justice in Latimer vs. Glenn, 2 Bush, (Ky.,) p. 544, as to the character of Mrs. Hayward's title, and with our construction of the stipulation as to the effect of the answer that it stands upon the record as true :· "Her equity," says the court, "is as elevated and pure and sacred as that of any creditor of her husband; her conduct is free from any fraud or overreaching, or concealment of any character; nor does it manifest any desire to screen the property of a failing husband from the just demands of his creditors, but only an honest effort to secure that which she regarded as her own, and which had been frequently accorded to her in the most prosperous days of her husband, and for which she had paid an ample consideration."

III. The omission of the court to allude in the opinion to the fact that the conveyance was not made until twenty-one years after the consideration (the release of dower) had transpired, is made one of the grounds of the application for a rehearing. The dower was released in 1844, and it is said the deed was not executed and recorded until 1865. This statement, standing alone and unqualified, is a very strong argument in favor of the petitioner. But is this the whole story?

The facts are that in 1844, Mr. Hayward, being embarrassed by debts, induced his wife to relinquish her dower in valuable property by agreeing to make at some subsequent period a conveyance to her of other property. He could not do it at that time on account of his embarrassment. In April, 1850, he made and signed the deed of the Tallahassee lot purporting to convey it to trustees for the use of Mrs. Hayward for life, but this deed was not then effective because not witnessed. The bill charges that Hayward kept this paper in his possession secretly from 1850 to 1865. Mrs. Hayward says it was delivered to her at its date by Mr. Hay-

ward, he stating to her that it was executed fully, and that he had thereby complied with his promise to her when she relinguished the dower, that she believed the deed was fully executed, there was nothing secret about it, that the property was afterwards treated and spoken of publicly and privately as her property, and she kept the deed among her own papers.

Mr. Austin, one of the trustees, says he was made aware of the existence of the deed soon afterwards, and was informed that all was done that was necessary to make it complete. At this time the grantor, Mr. Hayward, was in good circumstances. Will it be pretended that if this deed had been fully executed at that time, as Mrs. Hayward believed it was, it was liable to the imputation of fraud?

Subsequently Mr. Hayward moved to Louisiana with property and means valued at $130,000 or more. During the war he seems to have lost his property, like many others, and returned to Florida in 1865. In September of that year, the deed to Mrs. H. is presented for record, and was then perfected and recorded. During all this time Mrs. H. says she had possession of the deed, believing it to be good. She, if anybody, had been deceived during all those years, being made to believe that she had a good title to a town lot in Tallahassee. If so, for what purpose was the fraud undertaken, and to what end was it sought to be carried? There was no fraud upon these creditors in 1850 by the making of this deed, for they were not creditors, but if fraud at all, Mrs. Hayward was the victim, and her equities dated from 1844, while the complainants did not become creditors until some twelve or fifteen years afterwards. In a contest between these complainants, as creditors, and Mrs. Hayward, as a prior creditor, who had been led to believe she was secured when she was not entirely so, whose scale must kick the beam?

Any third party holding a document like the paper she held, might have compelled a conveyance at any moment;

and were her rights less sacred, or less valuable than those of any other, because she was a married woman and did not distrust her husband?

"To authorize the court to interfere with, (say the court in Seward vs. Jackson, 8 Cowen, 406, and in Wickes vs. Clarke, 8 Paige, 165,) and declare a voluntary settlement void, even as to creditors whose debts existed when the deed was made, intentional fraud must appear, and prior indebtedness is but a badge or argument of fraud, which may be explained or repelled by circumstances." And how much stronger must this case stand in favor of Mrs. Hayward, when the debts had no existence at the time the deed was delivered to her and she was made to believe she had what she was entitled to; when the conveyance was not merely voluntary, but upon a valuable consideration, and where there was no room for suspicion of bad faith.

The deed to her trustees was drawn up and signed in 1850. It was not completed until 1865, for the reasons stated, and however strong the suspicion arising out of the non-completion of it, it is, yet but a suspicion, which has been, in our judgment, entirely removed by a consideration of all the circumstances of the case.

IV. Counsel for complainants further submits that Mrs. Hayward, having made her will, and thereby exercised the power of appointment, by devising the entire property in Tallahassee to her granddaughter, and after making the will, having executed a deed to Mr. Lively of one-half the property, this deed operated as a revocation of the will as to this half; and, therefore, as Lively's deed was not a proper exercise of the power of appointment and conveyed no interest, which survives Mrs. Hayward as to this half, it falls back into the estate of Richard Hayward, and is subject to the complainants' judgment. If this conclusion be correct, the plaintiffs have but to sell this half upon their execution, and they do not need the aid of a court of equity. But on the other hand, if the deed to Lively is void as an execution

of the power of appointment, it is equally inoperative as a revocation of the will. If it was a good revocation of the will, it is because it otherwise disposes of the estate by a valid appointment. In either event it does not fall back to the estate of Richard Hayward.

I have not been able to conclude that a rehearing should be granted to the petitioners, the complainants in the case ; and I am supported in this by the judgment of the Justice, who has come to this bench in the place of Mr. Justice Fraser, resigned, (who prepared the original opinion,) who has examined the case with care with reference to this petition.

It is therefore ordered that the petition of the appellants be and the same is hereby refused.

A petition is presented also by counsel for Lively, one of the defendants in the case, praying a modification of the judgment and of the opinion, so far as it affects his interests in the particulars specified in his petition. Without further remark upon the merits of the petition, it is suggested that there may have been some misapprehension as to the judgment proper to be given in regard to the respective interests of Mr. Lively and Harriet Forte Hayward, the infant defendant, and considering the recent change in the constitution of this court, we have determined that counsel may be heard further in that behalf, after due notice to the guardian *ad litem* of said infant.

*M. D. Papy, Esq.*, counsel for M. Lively, filed the following petition for rehearing :

Counsel for M. Lively respectfully petitions the honorable court for a review of so much of the opinion pronounced in this case as declares the views of the court in regard to the relative rights of M. Lively and the grandchild of Mrs. Hayward in that portion of the lot which was conveyed to Lively, and for permission to argue the question as between these parties, who are joint defendants in the case.

The following grounds and reasons are offered for the consideration of the court :

Counsel for M. Lively understands that the opinion of the court that the power in this case must be executed by will alone, is based upon certain words on the deed, viz.: " to take effect after her decease," and that the court understood these words to apply to the instrument by which the power is to be executed, instead of the estate or property or use upon which the power was to act.   With all due deference to the court, and as this view of the subject was not advanced in argument by counsel at the bar, counsel for Lively avails himself of the privilege of directing the attention of the court to the precise terms of the deed and the significance which is due to the entire language employed. Premising that as a rule of construction full effect is to be given to every word, if it can be done consistently with the rules of law, so as thereby the better to carry out the intention of the grantor, I quote from the trust deed as follows :  " To have and to hold, &c., &c., for the only use, benefit and behoof of Mrs. Hayward during and for the term of her natural life, and to such further use as she, the said Harriet Hayward, may, by her last will and testament, or in any other manner, appoint, to take effect after her decease."

The words, " to take effect after her decease," in the judgment of counsel, clearly apply to the use or furtherance upon which the trustees were to hold, and not to the instrument by which the power was to be executed.   If we transpose these words thus, it would leave no doubt : " and to such further use, to take effect after her decease, as she, the said Harriet Hayward, may, by her last will and testament, or in any other manner, appoint."

That this was the intention of the trust deed, appears from two considerations :

First. The use of the terms, " or in any other manner," clearly indicates that the whole range of means by which a

power could be executed was to be within the discretion of the donee of the power; and as in this case there is no restraint upon these terms, we must suppose it was the intention to give this discretion, because, if exercised by deed, it would be in all its consequences precisely what the latter terms would authorize, viz.: the use would by deed take effect after Mrs. Hayward's death in the appointee, and could by no means take effect before her death.

Second. Because, whether the words "to take effect after her death" were in the deed or not, such would be the result any way, for the use, in the appointee of the power, could only take effect after Mrs. Hayward's death, whether the power was executed by will or deed, and in neither event could it take effect before her death. The use, then, of the words, "to take effect after her death," have no further operation than if they were not inserted, for neither in this nor in any other case of a gift for life, with power of appointment of the remainder, no matter what may be the form by which the power is executed, whether by deed or will, the use or the estate in the appointee could only take effect after the death of the donee of the power. If the words, "or in any other manner," are to be given any signification at all, we are to understand them as authorizing an appointment by deed, for in this case the execution of the power by deed does not in the least counteract the expressed intention that the use for which the trustees were to hold was to take effect in the appointee after the death of Mrs. Hayward. A power to appoint by will, or otherwise, has been decided to authorize an appointment by deed. The words, "or in any other manner," are the precise equivalent of "otherwise," for they are or constitute the very definition of the word. If we are to give them any effect in this case at all, we must understand them as authorizing an appointment by deed, because such is their signification in the relation in which they stand, and because there is nothing in the deed which makes the appointment " in any

other manner " than by will inconsistent with the manifest
intention, and with the uses and purposes declared. I main-
tain, then, that by the rules of construction, the terms, " to
take effect after her death," apply to the further use for
which the trustees are to hold the legal title, and not to the
instrument by which the power is to be executed.

This construction of the deed relieves all difficulty, and is
consistent with the act of all the parties, with their pur-
poses and intentions, and with the counsel and advice which
were given to Mrs. Hayward in regard to her power of ap-
pointing by deed.

The case of Heatly vs. Thomas, 15 Vesey, 596, was one
where the trusts of the deed were that it should be lawful
for Sarah Johnson, (the beneficiary,) at any time during her
said intended coverture, by her last will and testament in
writing, or any writing purporting to be her last will, to be
signed by her and attested, &c., to give and dispose of the
said sum, &c., to such person or persons, &c., as she should
think fit; and in case the said Sarah should happen to die
in the life-time of the said William, her intended husband,
and without making any will or other disposition, either of
the whole or any part thereof, that then, as to the whole or
such part as to which no gift or disposition should be so
made by her as aforesaid, the same should immediately, on
her death in the life-time of her intended husband, go and
be paid, &c., &c., according to the statute of distributions.
James Willis afterwards borrowed from the plantiff in the
case £700 on the security of the joint and several bonds of
himself, William Johnson and Sarah Johnson. Sarah John-
son gave a bond of indemnity to her husband. She, during
the life of her husband, made her will according to her
power, bequeathing all the property over which she had any
disposing power. Her husband died in March, and she in
September following, not having revoked or altered her
will.

The bill was filed to subject her separate estate under

the settlement, together with the estate of her husband, to the payment of the bond of the plaintiff.

The Master of the Rolls, (Sir William Grant,) suggested a doubt whether the bond could affect the separate property of Mrs. Johnson, as by the settlement she appeared to have no power to appoint except by will, and he directed a re-argument.

Sir Samuel Remilly was counsel for the plaintiff, and he argued that the intention, as gathered from the settlement, was to authorize an appointment, both of the principal and interest, by deed in her life as well as by will, for the terms are if she should die without making any will or other disposition, and the effect of the whole was that the property was settled to her separate use.

The facts of this case would seem to be be very strong against the power of the wife to appoint in any other way than by will, yet the Master of the Rolls, after taking the matter under advisement, made a decree in favor of the plaintiff, subjecting the estate of Mrs. Johnson to the debt.

The case of Sockett vs. Wray, referred to by the Master of the Rolls, was one where the wife had power to appoint the income or dividends only during or for life by deed, and after her death upon trust, &c., that the corpus should be transferred as Catherine Sockett should at any time during her life, by her last will and testament in writing, or any writing purporting to be her last will and testament, appoint. The Master of the Rolls in that case distinguished it from other cases cited, and held, as I think properly, that as to the interest she could dispose it for life, but as to the principal, she only could do so by a revocable act. I refer to this case to show that Sir William Grant, on his judgment in Heatley vs. Thomas subjecting the wife's property, places it on ground distinguishing that case from Sockett vs. Wray, where the language of the trust seemed explicit, confining the mode of appointment of the remainder to a will, or writing purporting to be a will, in express terms.

Counsel for Lively also respectfully suggests that he may have an opportunity to be heard on the question whether the mortgage from Mrs. Hayward to Hogue and wife was void, as declared in the opinion of the court, and to show that the mortgage was not a mortgage of the fee, but only of the rents, which were undoubtedly the property of Mrs. Hayward.

Counsel respectfully suggests that Mrs. Hayward was fully competent in law to convey her life interest, and to charge it for the debts of her husband; and that this was not in conflict or inconsistent with the terms of the deed of trust.

Chancellor Kent announced that "there is no doubt that a wife may sell or mortgage her separate estate for her husband's debts." 3 John. Ch., 143-4; 9 S. & M., 144.

Another point which counsel desires to call to the attention of the court, which did not arise in the argument of the case, because there was no contest between the two defendants, is how far the court will go in favor of the appointee of a power, who is a volunteer as against a creditor of the donee of the power, or one who has paid a valuable consideration for the property.

In this case Lively was a creditor as assignee of the mortgage, and also a purchaser for a valuable consideration from Mrs. Hayward; and it may here be said that as such purchaser, the failure of Mrs. Hayward to appoint (even if she had only power to appoint by will,) the remainder in his favor would operate as a fraud upon him, as he purchased under the full belief and under advice of counsel given to him and Mrs. Hayward that he was acquiring a right which would be sustained. Besides, as a creditor, where even the power can only be executed by will, where there is fraud intermingled, courts have gone to the extent of subjecting the property as against the appointee. There is no question that it will do so where the power is either by deed or will, for in this point there is no difference in any of the decisions,

but it is also so held where the power is only by will, *where it is general.* On this point I commend to the court the case of Johnson vs. Cushing, 15 New Hampshire, 298. The able opinion of the court upon a review of other authorities, announces the doctrine and effect of a general power, and shows that it is not determined by the mode of execution, but upon its objects, and that the power being general, though it is to be executed by will only if executed in favor of voluntary appointees, the court will subject the property in favor of creditors of the donee.

In view of the peculiar character of the questions which, if the grandchild of Mrs. Hayward was contesting the right of Lively, would require consideration, and inasmuch as they were not discussed in the contest which the creditors of Richard Hayward created in their effort to subject as well the part of the lot conveyed to Lively, and the part appointed to the grandchild of Mrs. Hayward, counsel respectfully asks the court for permission to be heard upon them before the opinion of the court, as given in this case, goes out as its final determination.

Of course counsel for Lively would be content if the opinion were to be modified to the extent of striking out, if the court should so prefer, so much of it as affects the questions between the two defendants, leaving the judgment of affirmance to stand as to the complainant, but modified as to the rights of Lively.

On which petition, RANDALL, C. J., delivered the opinion of the court as follows :

The counsel of M. Lively have presented a petition asking that the opinion and judgment be modified so far as it affects his rights in connection with the property in question. Upon this matter I will simply remark, that while I agree to the conclusion that the plaintiff's bill be dismissed, it is enough that the decision be placed upon the execution of the power by the making of the will of Mrs. Hayward.

Nalle & Co. v. Lively et al.

As to the conflicting claims that may arise between the devisee under the will, and Mr. Lively under the deed of Mrs. Hayward to him, it was unnecessary and improper for the Circuit Court to decree that Mr. Lively's title was good, because the contest in this case was between Nalle & Co. and the defendants; and so far as the decree of the Circuit Court might be construed to determine the respective rights of Lively and the devisee, it should be reversed, and they should be left to try their titles as they may see fit.

This, I understand, to be the effect of the judgment of this court in that respect. It was not intended to determine their respective rights in this suit, as such an issue is not presented by the record.

The petitioner Lively insists that the opinion of the court pronounced by Mr. Justice Fraser is based upon an erroneous construction of the terms of the trust deed in respect to the execution of the power, so far as that opinion relates to the effect of the deed of Mrs. Hayward to Lively. It is sufficient to say in that respect, without expressing any dissent from that opinion upon the abstract proposition that a power to be executed by will cannot be executed by deed, the effect of the deed to Lively is not determined by the judgment of this court. Whether that deed is a proper execution of the power is an open question, depending upon a critical construction of the language of the deed creating the power.

The petition is therefore refused.